[No. 7920.]

## THE PEOPLE EX REL V. STANDARD HOME CO.

1. WORDS AND PHRASES—*Similar.*  A thing which is somewhat like another, or resembles it in many respects, is similar thereto. (360.)

2. BUILDING AND LOAN ASSOCIATIONS—*Foreign.*  A foreign corporation, authorized by its charter to raise a fund by small periodical payments, from which loans may be made to those who contribute to such funds, and which is conducting a business of this character, is within the concluding provision of sec. 964 of the Revised Statutes, even though not technically a Building and Loan Association.  And it is immaterial whether those who subscribe to the fund are members of the corporation or not, or whether the foreign corporation does or does not pursue the precise course of domestic corporations, and take every step which the domestic corporation may take. (362.)

The defendant was engaged in issuing and selling Home Purchasing Contracts. Each contract was one of a series of one hundred. To become a member of any series, payment of a designated sum was required; and the holder was required to pay a like installment monthly until eighty monthly installments should have been paid, unless his liability were terminated, at an earlier date, at his option, pursuant to the provisions of the contract. The prompt payment of the monthly installments for six months rendered the holder eligible to receive a loan out of the reserve fund of the series of which he was a member, for the purchase of a home—the loan to be secured upon the home and repaid in prescribed monthly installments. *Held* that the general purpose of defendant, and of domestic building and loan associations was identical; and the foreign corporation not having complied with the statute, was liable to ouster by proceedings in *quo warranto*. (360-363.)

*Error to Denver District Court.* Hon. GREELEY W. WHITFORD, Judge.

Hon. FRED FARRAR, attorney general, Mr. NORTON MONTGOMERY, and Mr. H. WENDELL STEPHENS, assistant attorneys general, for The People.

Mr. HENRY J. HERSEY, for defendant in error.

WHITE, J., delivered the opinion of the court.

This is a proceeding in *quo warranto*, brought by the people on the relation of the attorney general, to oust the Standard Home Company, a corporation, from doing business in this state, for failure to comply with the provisions of chapter 33, S. L. 1897, (secs. 950-974, R. S. 1908), entitled: "An Act relating to building and loan associations, and providing penalties for failure to comply therewith, and repealing all acts in conflict therewith."

The Standard Home Company was incorporated under the laws of the State of Delaware, and has complied with all the laws of the State of Colorado entitling it to do business here, unless the aforesaid act is applicable, with which, it is conceded, the corporation has not complied. Therefore, the sole question involved is whether the defendant corporation is "doing a business in a form and character sim-

ilar to that authorized to be done by" building and loan associations, under provisions of the aforesaid statute. The question was determined upon the pleadings in favor of the company and the people bring the cause here for review on error.

Section 15 of the aforesaid act, (sec. 964, R. S. 1908), is as follows:

"Every corporation, company or association contemplating doing business in this state and having for a part of its title or name the words 'Loan and Building Association,' 'Building Association,' 'Building and Loan Association,' 'Saving and Loan Association,' or 'Co-operative Bank,' 'Saving and Investment Company,' and every corporation, company or association whose stock is payable by an accumulating fund in regular or stated periodical installments; and every corporation, company or association doing a business in a form and character similar to that authorized to be done by sec. 1 of this act, shall, if organized or incorporated in any state or territory other than the State of Colorado, be known in this act, as a foreign building and loan association."

Section 1 of the act (sec. 950, R. S. 1908), referred to in the above sec. 15, is as follows:

"Any association of not less than three persons hereafter incorporated under the laws of this state, which shall be organized within this state for the purpose of raising a fund by the collection of dues or stated payments from its members, to be loaned among its members, shall, in furtherance of such purpose, and after having complied with the requirements of this act, be authorized and empowered to levy, assess, and collect from its members such sums of money, by rates of stated dues, fines, interest on loans advanced, and premiums bid by members for the right of precedence in taking loans, as the corporation may provide for in its constitution or by-laws. Also, to acquire, hold

and convey all such real estate and personal property as may be legitimately pledged to it upon said loans, or may otherwise be transferred to it in the due course of its business."

The nature of the business proposed to be transacted by the defendant corporation as set forth in its charter, in general or specific terms, includes practically every character of business that may be carried on by a private corporation. Among that specially enumerated is the following: "To issue to any and all persons its Investment Contracts, on the participating plan or otherwise, in different denominations and classes, to be paid for on the weekly or monthly plan, to run for such period as may be provided for in the said contracts respectively, said contracts to be issued with or without coupons attached thereto, and maturing at different periods and *subject to redemption and cancellation by the company at or before maturity on a plan which shall be fully set forth in or on said investment contracts;* to make a mutual profit in the legitimate management of its business, and to encourage economy by providing a plan for the investment of funds, either in large or small amounts, in its investment contracts, *said investment contracts to be paid for by the investor, either in weekly or monthly installments, or both, and returning to the investor a liberal profit on his investment;* to loan money at interest upon real and personal property, or upon the notes and securities of any public or private corporation, firm, partnership, company, person or persons."

The nature of some of the business transacted by the corporation in this state, is as follows: it issues and sells contracts denominated, "Investment Home Purchasing Contracts." Each contract is one of a series of one hundred of like tenor, and when there are one hundred contract holders in a series, no more contracts may be written and sold in that series, but a new series started. To become a

contract holder in any series a person must pay the company a designated sum in advance, denominated the "purchase price" of the contract. The contract provides that thereafter the holder or owner of the contract must pay a like monthly installment to the company, of dues, until the company grants him a loan, or until eighty monthly installments of dues have been paid, unless terminated prior thereto, at the option of the holder, by the surrender for settlement in accordance with certain conditions set forth upon the reverse side of the contract; that the prompt payment of the monthly installments for six months renders the holder, eligible in the order of his application, to receive a loan of a designated sum for the purchase of a home, *out of the loan or reserve fund of the particular series to which his contract belongs;* that loans will be granted to contract holders in the series, when the amount accumulated in the loan fund, in accordance with the provisions of the contract, is sufficient for the purpose; that the loan or reserve fund of the series to which a contract belongs shall be accumulated by crediting thereto a designated sum from each monthly installment, after the third installment received on the several contracts of the series, together with the return principal payments from loans granted from the loan or reserve fund of the series, including interest thereon, profits derived on contracts in the way of lapses, fines, transfer fees, cash surrender thereof, etc., together with any necessary apportionments thereunto made by the company; that the amount of any loan received by a contract holder, together with 5% interest per annum thereon, payable monthly, shall be secured by a first lien in favor of the company on the property purchased as a home, and be repaid in installments of not less than a designated sum per month; that installments of dues paid on the contract and applied to the loan or reserve fund, with interest at the rate of 3% per annum, shall be returned to the holder of the

contract as a credit on his loan; that the remaining portion of monthly installments of dues shall be used by the company for expenses, or for any purpose the board of directors may determine; that eighty monthly installments shall constitute full payment of a contract, the maturity value of which is designated; that the company will thereupon pay the holder of such contract such sum out of the loan or reserve fund of the series to which the contract belongs "as soon as the amount contributed out of the installments of dues, with its proportionate share of earnings, shall equal" the designated sum; that in the event a contract shall be kept in force for eighty months, the holder not having received a loan thereon, and the credited value of the contract from all sources should be insufficient to equal the maturity value of the contract, the holder may at once withdraw the amount standing to the credit of his contract, which in no event shall be less than a designated sum, approximately 73% of the aforesaid designated maturity value of the contract.

It is not necessary to determine whether the defendant company is technically a building and loan association. If the form and character of business conducted by it is *similar* to that authorized to be done by corporations organized under chapter 33, *supra*, it is amenable thereto. Considering the provisions of the charter and the contract heretofore mentioned, we think that the defendant corporation is subject to the provisions of the act. It is not only authorized to do, but is engaged in doing, a business in a form and character similar to that authorized to be done by sec. 1 of the act. A thing which is somewhat like, or resembles in many respects another thing, is similar thereto. The one purpose for which a corporate entity may be created, under the provisions of sec. 1 of the aforesaid legislative act, is to raise "a fund by the collection of dues or stated payments from its members, to be loaned among

its members." And all powers therein granted are in furtherance of such purpose by express declaration of the section. Therefore, the general purpose of the defendant corporation, and a corporation organized under the statute in question, is not only similar, but actually identical, to-wit, the creation of a fund by small, periodic payments from which loans may be made to those who contribute to such fund. The fact that the corporation at bar does not, in raising the fund for the purpose aforesaid, do and perform each thing which a corporation organized under the provisions of sec. 1 of our act, may do, in no sense destroys its similarity thereto. A corporation organized under our statute is empowered to collect from its *members, in order to create a loan fund,* which may be loaned to them, such sums of money by rates of stated dues, fines and interest on loans advanced, as the corporation may provide for in its constitution or by-laws. The corporation at bar, *for the purpose of raising a loan fund* to be loaned to its contract holders, collects from them such sums of money by rates of stated dues, fines, interest on loans, etc., as it provides for in each series of contracts. The former corporate entity may issue and sell its shares of stock in one or more successive series, or upon the permanent or Dayton plans, either fully or partially paid up, in periodical or other installments, or upon all, either, or any of these plans, and with or without full participation in the earnings of such association, or partially in limited dividend bearing stocks as may be provided by the by-laws of such association. Sec. 3, S. L. 1897, (sec. 952, R. S. 1908). Clearly that which the company at bar is doing in this state may be done by a domestic company under the provisions of the act. While the rights and obligations of the contract holders of the former corporation are fixed by the contracts of the series to which they respectively belong, no substantial difference exists as to the rights and obligations of stockholders in the lat-

ter company. Their respective rights and obligations are fixed by the terms and conditions applicable to and which govern the particular class of stock or series to which their stock respectively belongs. While there is mutuality among the share holders of the same class, and all holding stock of that class fare alike, this is equally true in the contracts of the defendant company, and as to the rights and obligations of its contract holders. The character of mutuality required in building and loan associations organized when sec. 279 Mills' Ann. Stat. was in force is substantially different from the character of mutuality required under the act now in force.

But it is said that the persons to whom these contracts are sold, and loans made, are not members of the defendant corporation, and, therefore, are not of the class from whom funds may be collected or loaned by a corporation organized under the provisions of our statute. The contract holders of every contract series are members of that series, and constitute the entity that bears the expense and brings into existence the fund which may be loaned only to such members, and are in that sense members of the entity creating the loan fund. However, we think it immaterial whether the holders of these contracts are denominated members, stockholders or contract holders of the corporate entity. The substantial effect is the same and that is sufficient. It is so held in *State, ex rel. Atkinson, Attorney General, v. Co-operative Home Builders*, 47 Wash. 235, 91 Pac. 953, and in *State, ex rel. v. The Standard Real Estate Loan Company*, 80 Kan. 694, 103 Pac. 1006. In the former case, which was a *quo warranto* proceeding, the defendant company was engaged in selling and issuing contracts quite similar to the contracts in the case at bar, and it was claimed, as here, that as the persons with whom the contracts were made and to whom loans were granted were not members of the corporation or association defendant therein, the requirements

of the building and loan association act were not applicable, and *Attorney General v. Pitcher,* 183 Mass. 513, 67 N. E. 606, was, as here, relied upon in support of the contention. It was, nevertheless, held that the general plan and purpose of the defendant company was similar to that of a building and loan association, and actual membership of a contract holder in the corporation was unnecessary. In the case of *State, ex rel. v. The Standard Real Estate Loan Company, supra,* arising under a statute wherein the loan fund was accumulated from the members of the corporation only, the opinion is pertinent and conclusive of this case. It is as follows:

This is an original proceeding in *quo warranto,* brought by the state to oust the defendant from doing business in the state as a foreign building and loan association without procuring a certificate of authority from the bank commissioner, as the law requires. (Gen. Stat. 1901, sec. 1421.) It is admitted that the defendant is doing business in the state, and that no such certificate has been procured, but the defendant denies that it is a building and loan association.

The legislature has prescribed a scheme for domestic concerns of this character, *but it is not necessary that the plan of a foreign association be identical with that provided for in the statute to subject such association to the law requiring a license. Nor is it necessary that the scheme of the foreign association should conform to that of any other already in use, provided in essence and effect such association performs the functions and accomplishes the purposes for which building and loan associations are usually organized.* That the defendant organization clearly does. Its charter is studiously blind as to the object of its creation. *The plan does appear, however, in an 'investment contract' which the defendant issues and sells in the place of shares of stock.* It is not necessary to encumber the reports with a copy of this instrument or a feature-by-feature analysis and discus-

sion of its provisions. It is unique, presents a system differing in many formal respects from that of building and loan associations generally, and eliminates altogether some of the incidents of ordinary plans. But the vital and essential features of even the type prescribed for Kansas associations appear, and the court finds that the defendant is a foreign building and loan association, has procured no certificate of authority to do business in this state from the bank commissioner, is therefore doing business in the state contrary to law, and ought to be ousted. Judgment accordingly."

*State, ex rel. v. Folk,* 124 Tenn. 119, 135 S. W. 776, is relied upon by the defendant corporation, and it is said that the relator therein and the defendant company here are identical, and that the contract involved there was the same as here. While it is doubtless true that the contention is correct as to the corporation and contracts involved, the case is against the contention of defendant in error as to its rights in the premises. The question involved therein upon which the case was determined was the constitutionality of an amendment to the prior existing law entitled: "An Act to provide for the examination and supervision of building and loan associations doing business in the State of Tennessee." Section 2 thereof declared that the name "Building and Loan Association" as used in the act should include all corporations, societies, organizations or associations doing business in the state under a building and loan charter, or engaged in a building and loan business. The amendatory act undertook to make the section read as follows: "That the name of 'Building and Loan Association' used in this act, shall include all corporations, societies, organizations or associations doing business in this state, under a building and loan charter, or engaged in a building and loan business, or engaged in seeking investments from the citizens of the state by selling forms of stock, debentures, certificates, etc.,

on plans similar to building and loan associations, but which need not necessarily be mutual." The court held that the term "Building and Loan Associations" as used in the title of the original act should be given the legal significance that attached to such term under the law and decisions of the court at the time the original act was passed. The original act did not require corporations that were doing a business similar to building and loan associations to comply with its provisions, and the attempt to enlarge the meaning of the words "Building and Loan Association," by the amendment of the existing act instead of by original legislation upon the subject, was invalid. It is very certain that if·original legislation had included, within the terms of the act, corporations that were doing business similar to building and loan associations, as the legislative act here involved does, the decision of that court in that case would have been in conformity with the conclusion we have reached. Indeed, it is therein expressly stated that "This contract is similar in its terms and conditions to the business ordinarily done by building and loan associations organized under the law" of that state. Having no doubt that the defendant corporation is subject to the provisions of chapter 33, *supra,* the judgment is reversed and the cause remanded with directions to proceed in conformity with the views herein expressed.

*Judgment reversed.*

GABBERT, C. J., and BAILEY, J., concur.